Filed 3/9/22  P. v. Ruvalcaba CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| THE PEOPLE, | C091442 |
| Plaintiff and Respondent, | (Super. Ct. No. STK-CR-FE-2014-0008835) |
| v. | |
| PABLO RUVALCABA, | |
| Defendant and Appellant. | |

Defendant Pablo Ruvalcaba appeals from a postjudgment order denying his petition for resentencing under Penal Code section 1170.95.[1]  As we will explain, we agree the trial court erred.  We reverse the order and remand for a new hearing on the petition.

---

[1] Undesignated statutory references are to the Penal Code.

1

FACTUAL AND PROCEDURAL BACKGROUND

The parties agree that defendant and other members of the Norteño street gang planned an armed bank robbery.[2] Defendant was to drive the others and drop them off at the bank before the robbery, then rendezvous with the group a short distance from the bank, immediately after the robbery. Defendant drove the other men to the bank; when they went inside, he drove to a side street and parked, where he planned to wait out the five minutes he expected the robbery to take. He waited about 10 minutes, saw some of the police chase, realized the others were not coming to meet him, left the car, and ran home. After stealing over $15,000 from the vault, the robbers escaped the bank by taking hostages and stealing one of the hostages' cars. A lengthy police chase and gunfight between the police and the robbers ensued; tragically, one of the hostages died as a result of gunshot wounds inflicted by police officers. Defendant was neither present during the bank robbery nor present during the subsequent chase and gunfight.

A grand jury heard the case and was instructed on general principles of aiding and abetting, the natural and probable consequences doctrine, the felony-murder rule, and the provocative act doctrine. It returned a true bill on multiple counts involving defendant, including first degree murder of the victim hostage. Defendant entered a negotiated plea to first degree felony murder and admitted the allegation that the murder was committed during a robbery. (§§ 187, 189.)[3] On the People's motion, the trial court dismissed the

---

[2] As the parties agree on the basic facts of defendant's underlying conviction, we rely on the parties' briefing for our short summary of these facts. (See *Meddock v. County of Yolo* (2013) 220 Cal.App.4th 170, 175, fn. 3 [if the parties agree as to the facts, we may accept their agreed facts as mutual concessions].)

[3] The record is clear that the parties and court represented defendant was pleading guilty to murder "based on the felony murder rule," and that defendant pleaded guilty to murder "committed in the perpetration of robbery, within the meaning of Penal Code section 187 -- 189." However, the felony-murder rule was never applicable to the agreed-upon facts of defendant's involvement in the murder at issue here, as we explain in more detail, *post*.

2

remaining counts and struck the remaining allegations; the court sentenced defendant to 25 years to life in state prison.

*Section 1170.95 Petition*

On March 7, 2019, defendant filed a resentencing petition alleging he was prosecuted for, and convicted of, murder under the felony-murder rule or the natural and probable consequences doctrine and could not now be convicted of murder following the passage of Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Senate Bill No. 1437). The trial court found defendant had made a prima facie showing, appointed counsel, directed briefing, and issued an order to show cause (OSC).

At the "OSC hearing setting," the trial court stated that although it had found a prima facie case and would set a hearing, it would not set an *evidentiary* hearing. The prosecutor informed the court: "[I]t's an order to show cause hearing you would be setting. And at that order to show cause hearing, the defense would have a right to bring witnesses or whatever." The court disagreed, stating as relevant here that "the only witnesses that would be called would be witnesses who were unavailable . . . or unknown at the time of the plea." The court added: "[W]e're not going to have a trial. We're not going to have witnesses testify. This is -- we're not having a preliminary examination. This is going to be a question of -- of the law, how it applies to the facts as we have in the court file." When the prosecutor indicated the law provided for witnesses, the court responded: "It says it's possible. That's another area of vagueness and ambiguity. It doesn't specify the circumstances. But it seems to me that it would only be if there is newly discovered evidence, that sort of thing."

The hearing was continued for discovery and filing of motions, and at the next hearing the trial court again indicated it would only hear witnesses if they were presenting *new* evidence, as opposed to "evidence that was available at the time." The

3

court did not change its position despite a lengthy discussion with the prosecutor that evidenced a disagreement over the applicable procedure.[4]

At the OSC hearing, the trial court indicated it had read the parties' points and authorities, which relied primarily on the grand jury proceedings and other motions filed at various points in the case to discuss the underlying facts and theories of the case, as did the arguments at the hearing.

As relevant here, the People argued at the hearing that defendant was "convicted of first-degree murder under an implied malice theory of provocative act" rather than felony murder, despite his plea to felony murder, pointing out--as they had in their briefing--that the felony-murder rule was inapplicable to a situation such as this one, where neither defendant nor one of his accomplices is the actual killer. In their briefing, the People argued extensively that as an accomplice to the robbery, defendant was liable for the provocative acts committed by his accomplices, namely the taking of the hostage and the ensuing gun battle, which led to the officers' need to fire their guns at the accomplices and the vehicle they were in, accidentally killing the victim hostage as a result.

The People's briefing also "borrow[ed] the framework" of *People v. Clark* (2016) 63 Cal.4th 522 to analyze defendant's role and argue that he "acted with implied malice" and then argued alternatively that he was a major participant in the robbery and acted with the requisite indifference to human life under the framework outlined by *Clark* and *People v. Banks* (2015) 61 Cal.4th 788 such that he "could and would be convicted of

---

[4] The trial court also emphasized that any evidence introduced at the hearing should be admissible, rather than, as the prosecutor proposed, "whatever evidence I choose to submit." It appears the court was understandably concerned that the hearing would become a parade of prosecution witnesses whose testimony was not focused on *defendant's* involvement in the killing, as evidenced in part by the court's statement at one point: "We're not going to bring in 33 officers for a hearing on this."

4

first-degree murder under the newly amended section 189." The prosecutor also made these points at the hearing during argument.

Defense counsel argued as relevant here that defendant's participation in the crimes was limited to the point where it "negates implied malice." He added that the prosecutor had argued to the grand jury that defendant's liability was based on the natural and probable consequences theory as applied to the robbery, as well as the felony-murder theory, and defendant did not meet the requirements for either theory to apply. He also made these arguments (and others not pertinent to our analysis) in his briefing.

The trial court first concluded defendant was not convicted under a felony-murder theory, without mentioning the specifics of the plea to felony murder, as the killing was not "committed by the defendant or by his accomplice acting in furtherance of their common design." The court then expressly declined to address defense counsel's argument as to natural and probable consequences, instead addressing the provocative act theory advanced by the prosecution, but then noting that "the key issue here is does natural and probable consequence apply." The court then referenced pattern jury instruction CALCRIM No. 561, entitled Homicide: Provocative Act by Accomplice, as revised in September 2019, in great detail. The portion of the instruction referenced by the court reads as follows:

"To prove that the defendant is guilty of murder under the provocative act doctrine, the People must prove that:

"1. The defendant was an accomplice of _____ *<insert name[s] or description[s] of alleged provocateur[s]>* in (committing/ [or] attempting to commit) _____ *<insert underlying crime>*;

"2. In (committing/ [or] attempting to commit) _____ *<insert underlying crime>*, _____ *<insert name[s] or description[s] of alleged provocateur[s]>* intentionally did a provocative act;

5

"3. *<insert name[s] or description[s] of alleged provocateur[s]>* knew that the natural and probable consequences of the provocative act were dangerous to human life and then acted with conscious disregard for life;

"4. In response to _____'s *<insert name[s] or description[s] of alleged provocateur[s]>* provocative act, _____ *<insert name or description of third party>* killed _____ *<insert name of decedent>*;

"AND

"5. _____'s *<insert name of decedent>* death was the natural and probable consequence of _____'s *<insert name[s] or description[s] of alleged provocateur[s]>* provocative act.

"A *provocative act* is an act:

"1. [That goes beyond what is necessary to accomplish the _____ *<insert underlying crime>*;]

"[AND

"2.] Whose natural and probable consequences are dangerous to human life, because there is a high probability that the act will provoke a deadly response.

"The defendant is an *accomplice* of _____ *<insert name[s] or description[s] of alleged provocateur[s]>* if the defendant is subject to prosecution for the identical offense that you conclude _____ *<insert name[s] or description[s] of alleged provocateur[s]>* (committed/ [or] attempted to commit). The defendant is subject to prosecution if (he/she) (committed/ [or] attempted to commit) the crime or if:

"1. (He/She) knew of _____'s *<insert name[s] or description[s] of alleged provocateur[s]>* criminal purpose to commit _____ *<insert underlying crime>*;

"AND

"2. The defendant intended to, and did in fact, (aid, facilitate, promote, encourage, or instigate the commission of _____ *<insert underlying crime>*/ [or] participate in a criminal conspiracy to commit _____ *<insert underlying crime>*).

6

"[An accomplice does not need to be present when the crime is committed.  On the other hand, a person is not an accomplice just because he or she is at the scene of a crime, even if he or she knows that a crime [will be committed or] is being committed and does nothing to stop it.]

"In order to prove that _____'s *<insert name of decedent>* death was the *natural and probable consequence* of _____'s *<insert name[s] or description[s] of alleged provocateur[s]>* provocative act, the People must prove that:

"1. A reasonable person in _____'s *<insert name[s] or description[s] of alleged provocateur[s]>* position would have foreseen that there was a high probability that (his/her/their) act could begin a chain of events resulting in someone's death;

"2. _____'s *<insert name[s] or description[s] of alleged provocateur[s]>* act was a direct and substantial factor in causing _____'s *<insert name of decedent>* death;

"AND

"3. _____'s *<insert name or description of decedent>* death would not have happened if _____ *<insert name[s] or description[s] of alleged provocateur[s]>* had not committed the provocative act.

"A *substantial factor* is more than a trivial or remote factor.  However, it does not need to be the only factor that caused the death."  (CALCRIM No. 561.)

After paraphrasing the provisions of CALCRIM No. 561 set forth above and quoting from the instruction at length, the trial court opined that the major participant and reckless indifference requirements for felony murder were "analogous to what's required for a person to be convicted of a provocative act."  The court then examined the evidence as set forth in the parties' briefs and concluded defendant was a major participant in the robbery who acted with reckless indifference to human life, although it did not specifically articulate an analysis based on each of the relevant factors set forth in the *Clark* and *Banks* cases.

7

The trial court found that it was not clear the natural and probable consequences instruction would have been given if defendant's case had gone to trial, but even if it were given, defendant "could have been -- he would have been convicted with the new instructions [referencing CALCRIM No. 561]. Without the natural and probable consequence full instruction, he would have been found a major participant and it would have been found that he was acting with reckless indifference to human life. Therefore, I do not believe he is eligible for relief under this section." The court denied the petition. As relevant here, the court went on to state it believed there was overwhelming evidence of guilt, "and I know the standard is beyond a reasonable doubt for this hearing. I believe beyond a reasonable doubt he would have been found a major participant, acting with reckless indifference to human life, that the defendant would have been convicted of first-degree murder in a trial."

Defendant timely appealed. After numerous delays in preparation of the record as well as multiple continuances of the briefing schedule, the initial briefing was completed on July 21, 2021, and the case was assigned to this panel on September 22, 2021. We ordered supplemental briefing in October 2021, and the case was fully briefed on November 9, 2021. Defendant requested oral argument after receiving our oral argument waiver notice; argument was heard on February 25, 2022.

As we next explain, we conclude the order must be reversed and the matter remanded given the trial court's failure to make the required findings beyond a reasonable doubt and failure to consider the parties' requests to present additional evidence. Given that conclusion, we address the remainder of defendant's claims only where necessary to provide context or limited guidance on remand.

DISCUSSION

Defendant's opening brief raised a number of claims of error related to the denial of his petition, including insufficient evidence of the components of felony murder (the theory under which he entered his plea) per the amendments to the relevant statutes, error

8

in imputing malice to him under the new law, and the inapplicability of the provocative act doctrine to his conduct.  He also argued error in refusal to allow the parties to present any evidence except that which was "newly discovered" at the OSC hearing, which resulted in a hearing that was submitted and argued on the briefs (which in turn relied on grand jury testimony), and he noted the trial court's resulting "uncritical reliance" on the prosecutor's characterization of critical facts, such as the nature of the plan.

The Attorney General argued at the outset that because the felony-murder rule was never applicable to defendant's conduct, the plea was *not* to felony murder and therefore section 1170.95 does not even apply to defendant's case; he posited that instead the plea was to provocative act murder, and argued that therefore "[a]ll that matters is whether the evidence showed [defendant] acted with malice aforethought."  He admitted the trial court did not expressly make that finding, but argued that it impliedly did so when it analogized provocative act murder to felony murder and found defendant acted with reckless indifference to human life.  As for the claim of error in categorically excluding testimony at the hearing, the Attorney General argued forfeiture and absence of prejudicial error.

After reviewing the transcript of the OSC hearing, we directed the parties to answer the question of whether the trial court applied "the correct standard at defendant's Penal Code section 1170.95, subdivision (d) hearing; that is, did the trial court act as an independent fact finder applying the law as of January 1, 2019 and determine whether the prosecution met its burden to prove each element of the murder charge against defendant beyond a reasonable doubt?"

We next address that question and conclude the trial court did not clearly utilize the correct standard when it considered defendant's petition.  We then discuss defendant's original claim of error in limiting presentation of evidence.

9

# I

## *Required Findings at the OSC Hearing*

Defendant contends the trial court erred in applying an incorrect analysis under section 1170.95, subdivision (d)(3) when evaluating his claim, in that it did not act as an independent factfinder to determine whether the People had proven each element of murder under current law beyond a reasonable doubt. The Attorney General "generally agrees" that trial courts should act as independent factfinders at evidentiary hearings held pursuant to section 1170.95 but contends the trial court did so here. We disagree that it is clear the trial court made the requisite findings beyond a reasonable doubt, as we explain after outlining the relevant law.

Senate Bill No. 1437, which took effect on January 1, 2019, limited accomplice liability under the felony-murder rule and eliminated the natural and probable consequences doctrine as it relates to murder, to ensure that a person's sentence is commensurate with his or her individual criminal culpability. (*People v. Gentile* (2020) 10 Cal.5th 830, 842-844.) Senate Bill No. 1437 amended section 188 to state that malice may not be imputed to a person based solely on their participation in a crime. (§ 188, subd. (a)(3).) Thus, under current law, where the felony-murder rule is not at issue, a person must act with malice to be convicted of murder.

Senate Bill No. 1437 also added section 1170.95, which created a procedure whereby persons convicted of murder under a felony-murder or natural and probable consequences theory may petition in the sentencing court for relief and resentencing. As relevant here, defendant is eligible for relief under section 1170.95 if he could no longer be convicted of first or second degree murder due to changes to sections 188 and 189 made by Senate Bill No. 1437. (See § 1170.95, subd. (a)(3).)

Here, the trial court determined the prima facie showing was made and issued an OSC, then conducted a hearing to determine whether to vacate the murder conviction and resentence the petitioner on any remaining counts as required by statute. (§ 1170.95,

10

subds. (c), (d).)  The parties agree that at the hearing the burden of proof was on the prosecution to prove, beyond a reasonable doubt, that the petitioner was ineligible for resentencing.  (§ 1170.95, subd. (d)(3).)

We agree with the parties that the trial court must find beyond a reasonable doubt that defendant *actually acted* with the now-required mental state, as opposed to merely that a jury could have or would have so found.  This conclusion is bolstered by the recent legislative amendments to section 1170.95, affirming "that the proper burden of proof at a resentencing hearing under this section is proof beyond a reasonable doubt" (Sen. Bill No. 775 (2021-2022 Reg. Sess.), Stats. 2021, ch. 551, § 1, subd. (c) (Senate Bill No. 775)) and that "[a] finding that there is substantial evidence to support a conviction for murder . . . is insufficient to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing" (*id*., § 2, subd. (d)(3)).

As we have set forth above and as evidenced by the transcript of the trial court's ruling, the court repeatedly stated that *the jury would have convicted* defendant of murder despite the changes in the law.  This language does not signal independent review. Further, it suggests an analysis of the evidence looking backward, under the law as it existed at the time of the original proceedings, not an analysis of the evidence under the law as it presently exists.  Although the court later acknowledged the standard of review was beyond a reasonable doubt, it again indicated it *believed* defendant "*would have been*" found to be a major participant who acted with reckless indifference.  It is not clear to us that the court was actually applying the correct standard when it made that statement nor is it clear the court *itself* found beyond a reasonable doubt all elements of murder, under any theory, were proven beyond a reasonable doubt under the current law. Under this circumstance, compounded by the error that we discuss *post*, in part II of our

11

Discussion, we must remand the matter for a new section 1170.95, subdivision (d)(3) hearing.[5]

Although we need not and do not address the parties' arguments regarding the applicability of accomplice liability under the provocative act theory to defendant's conduct, we note that in deciding to utilize CALCRIM No. 561 for its analysis, the trial court opined that "there's no harm in giving the natural and probable consequence instruction as it relates to CALCRIM 561 . . . . And certainly, the editors of CALCRIM do not think it's a problem." Given this observation by the trial court as well as its subsequent ruling based heavily on the application of this instruction, we are compelled to point out that the Bench Notes to CALCRIM No. 561 (entitled Homicide: Provocative Act by Accomplice, as revised in September 2019), caution the user that: "[S]ection 188, as amended by Statutes 2018, ch. 1015 ([Senate Bill] 1437), became effective January 1, 2019. The amendment added 'malice shall not be imputed to a person based solely on his or her participation in a crime.' The continued legality of provocative act murder liability *when an accomplice committed the provocative act* may be affected by this statutory change." (Italics added.)

---

[5] In a supplemental authority letter, the Attorney General cites *People v. Garrison* (2021) 73 Cal.App.5th 735, where the Second Appellate District, Division One, found no prejudice in the trial court's application of the incorrect standard to its determination. In that case, the evidence at the hearing "supported only the conclusion that Garrison was the actual killer"; thus, the error was harmless and remand was not required. (*Id*. at p. 738.) Garrison was "ineligible for resentencing as a matter of law." (*Id*. at p. 747.) As we explain *post*, that is clearly not the situation here. Nor is *People v. Clements* (2022) __ Cal.App.5th __ [2022 Cal.App. Lexis 124], also cited by the Attorney General immediately prior to oral argument, analogous to the situation at hand. In that case, it was "basically uncontested" that the defendant solicited the actual killer to attack the victim, and the defendant had "request[ed] and coordinat[ed]" the attack. (*Id*. at p. *38.) Indeed, Clements had told the victim: " 'I'll see you dead . . . and my friends will do it.' " (*Id*. at p. *40). That case is nothing like this one.

We add that the landscape has also changed since the time of the hearing and the time of the most recent revision to CALCRIM No. 561; the amendments contained in Senate Bill No. 775 clarify that the changes in the law permit "a person who was convicted of murder under *any theory under which malice is imputed to a person based solely on that person's participation in a crime* . . . to apply to have their sentence vacated and be resentenced if, among other things, the complaint, information, or indictment was filed to allow the prosecution to proceed under a theory of felony murder, murder under the natural and probable consequences doctrine *or other theory under which malice is imputed to a person based solely on that person's participation in a crime*, or attempted murder under the natural and probable consequences doctrine." (Legis. Counsel's Dig., Sen. Bill No. 775 (2021-2022 Reg. Sess.; Stats. 2021, ch. 551, § 2, italics added.)

Here, an accomplice committed the provocative act of shooting at the police. To the extent the trial court found malice imputed to defendant "solely on his [] participation in" the bank robbery, this finding is now suspect due to subsequent changes in the law. Although we were not specifically asked to decide the continued viability of accomplice liability under the provocative act doctrine as a basis for a murder conviction, and accordingly decline to do so, the trial court and parties should be aware of the contributions by Senate Bill No. 775 to the relevant analysis of defendant's petition on remand.

## II

### *Consideration of Evidence at the OSC Hearing*

As we described *ante*, one of defendant's original claims of error was that the trial court erred in "peremptorily precluding an entire class of evidence" at the OSC hearing. Defendant argues this exclusion was also a violation of his due process rights as it deprived him of the opportunity to present a defense. The Attorney General does not argue that the trial court correctly interpreted the statute and does not address defendant's

13

due process claim.  He argues defendant's claim is forfeited and that defendant can neither demonstrate error nor establish prejudice.  Defendant has the better argument.

Section 1170.95, subdivision (d)(3) permits both the prosecutor and the petitioner to offer "new or additional evidence to meet their respective burdens."  There is no requirement that the evidence be limited to "newly discovered" or any other similar restriction.  Further, the Legislature recently clarified in Senate Bill No. 775 that at the OSC hearing:  "The admission of evidence in the hearing shall be governed by the Evidence Code, except that the court may consider evidence previously admitted at any prior hearing or trial that is admissible under current law, including witness testimony, stipulated evidence, and matters judicially noticed.  The court may also consider the procedural history of the case recited in any prior appellate opinion.  However, hearsay evidence that was admitted in a preliminary hearing pursuant to subdivision (b) of Section 872 shall be excluded from the hearing as hearsay, unless the evidence is admissible pursuant to another exception to the hearsay rule.  The prosecutor and the petitioner may also offer new or additional evidence to meet their respective burdens."  (Stats. 2021, ch. 551, § 2, subd. (d)(3).)  This language makes clear that in addition to the evidence already in the court files and the record of conviction, the parties may present new *or* additional evidence at the OSC.  There is no requirement such evidence be newly discovered.

There are a number of other statutes that allow the introduction of "new evidence," including the statutes governing new trial motions (§ 1181) and petitions for writ of habeas corpus (§ 1473).  Those statutes, however, contain their own definitions of "new evidence."  In those statutes, the Legislature has explicitly defined new evidence to exclude evidence that could have, with reasonable diligence, been discovered and produced at trial or prior to judgment.  (§§ 1181, subd. 8, 1473, subds. (b)(3)(B) & (f), 1473.6, subds. (a) & (b).)  In these statutes, the Legislature has defined or placed limits on the introduction of "new evidence," demonstrating that it knows how to limit the

14

admissibility of such evidence when it intends to do so.  There are no such restrictions here or textual evidence of a legislative intent to place a blanket limitation on the evidence permitted in a section 1170.95, subdivision (d)(3) hearing as the trial court did here.  We will not read such a limitation into the statute.  (See, e.g., *People v. Wilson* (2020) 53 Cal.App.5th 42, 50-52 [rejecting interpretation of § 1170.95, subd. (g) that would require the court to add words to the statute that do not currently exist]; *People v. Roach* (2016) 247 Cal.App.4th 178, 185 ["Additional restrictions on a trial court's authority at resentencing could have been included in section 1170.18, but were not"]; *Vasquez v. State of California* (2008) 45 Cal.4th 243, 253 ["We may not rewrite the statute to conform to an assumed intention that does not appear in its language"].)

As to forfeiture, it is clear that any objection would have been futile given the prosecution's countless procedural protestations, both oral and written, that fell on deaf ears.  The trial court repeatedly stated that it was not going to allow witness testimony, and that the evidence was *limited* to the existing court file, with the possible exception of newly discovered evidence.  It specified that such evidence was required to have been unavailable or unknown at the time of the plea.  Under these circumstances, an offer of proof is not required to raise the issue on appeal.  (See *Beneficial etc. Ins. Co. v. Kurt Hitke & Co*. (1956) 46 Cal.2d 517, 522.)

Moreover, the trial court's blanket prohibition on presenting anything other than newly discovered evidence at the OSC hearing is particularly troubling where, as here, the matter was resolved by a plea that rested on grand jury proceedings.  Defendant had no opportunity to cross-examine or otherwise challenge the evidence presented to the grand jury or to present his own evidence.  The trial court's limitation prevented defendant from having a meaningful opportunity to confront the evidence against him as well as to present evidence in his favor.  Thus, we cannot conclude the trial court's error in depriving defendant of these constitutional rights was harmless beyond a reasonable doubt.  (See *Chapman v. California* (1967) 386 U.S. 18, 24; *People v. Aranda* (2012)

55 Cal.4th 342, 363.)  Accordingly, we will reverse and remand the matter for a new hearing, with instructions to permit the parties to offer evidence at the OSC hearing, subject to the trial court's continuing discretion to control the proceedings and apply the Evidence Code, including discretion to exclude evidence that is irrelevant to the specific question before the court:  whether defendant remains guilty of murder after the amendments to sections 188 and 189.[6]

## DISPOSITION

The order denying defendant's petition for resentencing is reversed and the case is remanded for the trial court to conduct a new hearing under section 1170.95, subdivision (d)(3) as described by this opinion.

/s/

Duarte, Acting P. J.

We concur:

/s/

Renner, J.

/s/

Krause, J.

---

[6] Because the People were also prevented from introducing evidence at the OSC hearing, we reject defendant's argument that we should not remand for a new hearing because the prosecution already "had its chance to prove [he] was a major participant who acted with reckless indifference to human life, and it failed to do so, as a matter of law."